STATE of Iowa, Appellee,

v.

Tyrel SACKETT, Appellant.

No. 91–713.

Court of Appeals of Iowa.

Feb. 23, 1993.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich and Virginia Barchman, Asst. Attys.

Gen., and Robert L. Fulton, County Atty., for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

The defendant, Tyrel Sackett, appeals his convictions, following a jury trial, of second-degree sexual abuse in violation of Iowa Code section 709.3(2) (1991) and lascivious acts with a child in violation of Iowa Code section 709.8(1) (1991). He contends the district court erred in: (1) limiting his cross-examination of an accomplice regarding the accomplice's plea agreement with the State; and (2) denying his motions for judgment of acquittal based on the alleged insufficiency of the evidence against him.

During Sackett's jury trial, Judy Smith testified she and Sackett became lovers in April of 1990, and she testified Sackett molested her daughter, S.S., both in and outside of her presence over the course of this relationship. Smith stated Sackett forced S.S. to both watch and participate on several occasions when Sackett and Smith performed sexual acts.

During the defense's cross-examination of Smith, Smith testified the State had originally charged her with second-degree sexual abuse and felony child endangerment. However, the State dismissed the second-degree sexual abuse charge and permitted Smith to plead guilty to the aggravated misdemeanor of child endangerment not resulting in serious injury in exchange for testifying against Sackett. The State objected to defense counsel's attempt to elicit testimony from Smith during cross-examination concerning the reduction in the maximum sentence as a result of the plea bargain on the ground that such testimony would reveal the potential sentence facing Sackett on the second-degree sexual abuse count.

More specifically, defense counsel sought to elicit from Smith the fact that the maximum penalty for the crime with which Smith was originally charged was twenty-five years, while the maximum penalty for the crime to which Smith pleaded guilty was only two years. Defense counsel's purpose in eliciting this testimony was to show Smith's bias as an alleged accomplice who was testifying for the prosecution pursuant to a plea agreement.

Following a hearing outside the presence of the jury, the district court sustained the State's objection, stating the jury was not to be exposed to the possible penalties for each of the crimes because the defendant was charged with the same offense and the matter of penalty was not within the province of the jury. The court ruled, however, that defense counsel could elicit testimony that Smith received a benefit as a result of the plea agreement. When cross-examination resumed, Smith admitted to the jury she had received a "large benefit" under the agreement.

S.S. also testified at trial regarding sexual relations with Sackett, although her testimony varied from Smith's in some respects. In addition, testimony was presented that Jerry Smith, Judy Smith's former husband, had been suspected of sexually abusing S.S. in 1987.

After the district court denied Sackett's motions for judgment of acquittal, the jury found Sackett guilty as charged. Sackett filed a motion in arrest of judgment and for a new trial, alleging the district court's refusal to permit him to fully cross-examine Judy Smith concerning her plea agreement violated his state and federal constitutional rights to due process, to a fair trial, to confront and cross-examine witnesses, and to effective assistance of counsel. The district court denied Sackett's posttrial motions, entered judgment, and sentenced Sackett to consecutive, indeterminate prison terms of up to twenty-five and five years on the respective counts. Sackett appeals.

■■■ We review for an abuse of discretion. In order to show an abuse of discretion, one generally must show that the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)). To the

extent the defendant is alleging error involving a constitutional right, we make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries*, 417 N.W.2d 237, 239 (Iowa App.1987).

Initially, Sackett contends the trial court erred by prohibiting him from cross-examining Judy Smith about the relative maximum penalties for the crimes for which she was charged as contrasted with the charge to which she pleaded guilty as probative of Smith's credibility as a witness. Sackett further asserts that defense counsel's opportunity to inform the jury that Smith received a "large benefit" was simply not adequate to demonstrate the extent of the inducement for Smith's testimony. We disagree.

In *State v. Armento*, 256 N.W.2d 228, 229 (Iowa 1977), the supreme court recognized that the right of a party to impeach a witness by showing bias or interest is well established. The *Armento* court noted:

> A defendant should be permitted wide latitude in seeking to show bias of an alleged accomplice who testifies for the prosecution. The pendency of the same charge against an accomplice creates a reason for him to testify favorably for the State to curry favor in order to obtain leniency.
>
>  . . . .
>
> The rule allowing great or liberal latitude in the cross-examination by defendant of a witness for the prosecution, with respect to his motive for testifying, is especially applicable where such witness is a codefendant or accomplice of the accused ... and whose testimony against defendant may be influenced by a promise of, or hope or expectation of, immunity or leniency with respect to his case as a consideration for testifying against the defendant.

*Id.*

The *Armento* court held it was error for the district court to prohibit the defendant's accomplice to testify to the penalty for first-degree murder. However, the court determined the ruling was not reversible error, stating:

> The jury obviously knew first-degree murder carries a most serious penalty. That the jury did not known [sic] precisely what [the accomplice witness] believed the penalty to be could not materially have affected the jury's impression of his motivation in testifying for the State. In these circumstances it does not sufficiently appear that his rights were injuriously affected or that he suffered a miscarriage of justice.

*Id.* at 230.

This same issue was considered in *State v. Horn*, 282 N.W.2d 717 (Iowa 1979). The *Horn* court drew upon its discussion in *Armento*, holding the trial court's refusal to permit questions of a witness regarding the penalties for lesser-included offenses was not reversible error where defense counsel had been permitted to elicit testimony from the witness concerning the penalty for first-degree murder. *Id.* at 728.

The court did, however, find reversible error in *State v. Donelson*, 302 N.W.2d 125 (Iowa 1981). In *Donelson*, the defendant was convicted of first-degree sexual abuse. During cross-examination of an accomplice, defense counsel sought to impeach the witness's credibility by disclosing the full facts of a plea bargain entered into with the State whereby the State agreed to reduce the charge against the witness from first-degree sexual abuse, which carried a mandatory life sentence, to an aggravated misdemeanor, which carried a penalty of two years imprisonment. *Id.* at 128–29. The trial court restricted the scope of the cross-examination to the extent that defense counsel was only permitted to show that in exchange for the accomplice's testimony, the State agreed to reduce his charge from a felony to a misdemeanor. Counsel was not permitted to elicit testimony regarding the relative maximum penalties for each offense.

In reversing the defendant's conviction, the supreme court stated:

> The rule is unquestioned that a defendant may inquire about the concessions

the accomplice hopes to receive or has been promised for his testimony, and where the State has gone so far as to enter into a bargain with the accomplice the defendant must be allowed to inquire about the terms of the bargain so that the jury may better understand the possible motivations of the accomplice as he sits on the stand.

*Id.* at 131.

Because the scope of Sackett's cross-examination of Smith was not nearly as constrained by the trial court as that in *Donelson,* we conclude *Armento* and *Horn* are controlling in the present case. *See Luke v. State,* 465 N.W.2d 898, 905 (Iowa App. 1990). Here, the jury was aware the accomplice had been originally charged with second-degree sexual abuse—the same offense with which Sackett had been charged. The jury undoubtedly knew that the original charge of second-degree sexual abuse was a most serious charge involving a most severe penalty. Furthermore, the jury was well aware that Smith had received a "large benefit" in exchange for her testimony for the prosecution.

We conclude the scope of cross-examination permitted by the trial court adequately advised the jury of the magnitude of Smith's bias. Accordingly, we hold the trial court did not commit reversible error in sustaining the prosecution's objections.

█ Next, Sackett contends the district court incorrectly denied his motions for judgment of acquittal based on the alleged insufficiency of the evidence presented at trial to sustain his convictions. Our standard of review on this issue is well settled. A verdict will be upheld where there is substantial evidence to support the charge. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984). We consider all the evidence at trial, not just the evidence that supports the verdict. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980).

Specifically, Sackett contends that Smith's testimony, as an accomplice, was not sufficiently corroborated in accordance with Iowa Rule of Criminal Procedure 20(3) (1992), and he claims Smith's strong motive to testify against Sackett diminished the weight and credibility of Smith's testimony. We find both of these arguments to be without merit and conclude substantial evidence exists in the record to support both of Sackett's convictions.

█ The record reveals ample evidence supporting Smith's testimony. In addition, whether and to what extent Smith was biased was a matter for the jury's determination. The supreme court in *State v. Blair,* 347 N.W.2d 416, 420 (Iowa 1984) has noted:

[T]he jury is at liberty to believe or disbelieve the testimony of witnesses as it chooses ... and give such weight to the evidence as in its judgment the evidence was entitled to receive. (Citation omitted.) The very function of the jury is to sort out the evidence presented and place credibility where it belongs.

Having carefully considered Sackett's arguments in light of the record before us, we affirm Sackett's convictions in accordance with the above discussion.

**AFFIRMED.**